UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-MJ-03237-BECERRA

UNITED STATES OF AMERICA

v.

DAVID TYLER HINES,

        **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? __ Yes  X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes  X No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? __ Yes  X No

                                          Respectfully submitted,

                                          ARIANA FAJARDO ORSHAN
                                          UNITED STATES ATTORNEY

BY: _____
        MICHAEL N. BERGER
        Assistant United States Attorney
        Southern District of Florida
        Court ID No. A5501557
        99 Northeast 4th Street, 4th Floor
        Miami, Florida 33132-2111
        Telephone: (305) 961-9445
        E-mail: michael.berger2@usdoj.gov

        EMILY SCRUGGS
        Trial Attorney
        Court ID No. A5502310
        Department of Justice
        1400 New York Ave, NW
        Washington, DC 20530
        Telephone: (202) 616-2488
        Email: Emily.scruggs@usdoj.gov

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>David Tyler Hines,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:20-MJ-03237-BECERRA<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   May 9, 13, & 18, 2020   in the county of   Miami-Dade   in the
  Southern   District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1014 | False Statement to Lending Institution |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1957 | Engaging in Transactions in Unlawful Proceeds |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

United States Postal Inspector Bryan Masmela
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim. 4.1 by telephone.

Date:   7.23.20  

*Judge's signature*

City and state:   Miami, Florida     Hon. Jacqueline Becerra, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bryan Masmela, being first duly sworn, state:

## AGENT BACKGROUND AND INTRODUCTION

1. I am a United States Postal Inspector and have been employed by the United States Postal Inspection Service since February 2003. As a U.S. Postal Inspector, your affiant is responsible for the investigation of violations of United States law, including violations of Title 18 of the United States Code. I am currently assigned to the mail fraud team in the Miami Division and my duties include investigating cases related to mail fraud, wire fraud, bank fraud, money laundering, and related financial crimes. I am authorized to obtain and execute federal arrest, search, and seizure warrants.

2. This affidavit is made in support of a criminal complaint charging DAVID TYLER HINES ("HINES") with violations of Title 18, United States Code, Sections 1014 (False Statements to a Financial Institution), 1344 (Bank Fraud), and 1957 (Engaging in Transactions in Unlawful Proceeds).

3. This affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means. This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## OVERVIEW OF THE SCHEME AND THE PAYCHECK PROTECTION PROGRAM

### *Overview of the Paycheck Protection Program*

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS").

6. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of

2

employees, is transmitted by the lender to the SBA in the course of processing the loan. In the ordinary course of providing the loan guaranty, neither the SBA nor any other government agency checked IRS records to confirm that the applicant had paid the payroll taxes represented in the PPP applications.

7. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### *Background of HINES and Overview of the Scheme*

8. The United States is investigating fraudulent applications submitted in the name of companies operated by DAVID TYLER HINES, to a lender approved by the SBA. HINES sought approximately $13.5 million in PPP funds, purportedly for the purpose of paying employees. Those purported employees either did not exist or earned a fraction of what HINES claimed in his PPP applications. Collectively, HINES falsely claimed his companies paid millions of dollars in payroll in the first quarter of 2020. State and bank records, however, show little to no payroll expense during this period.

9. The lender approved three applications and paid $3,984,557.00 in PPP loans. Instead of funding payroll, HINES spent the PPP money on personal expenses at dating websites, luxury jewelry and clothing retailers, and Miami Beach resorts. HINES also spent PPP funds to purchase a 2020 Lamborghini sportscar for $318,497.53 that he registered jointly in his name and the name of his company.

10. HINES was a resident of Miami, Florida at all times relevant to the events described herein. HINES lists himself as authorized representative and either manager or president of four companies that applied for PPP loans.

11. The website for the Florida State Division of Corporations (https://dos.myflorida.com/sunbiz/) lists the following information for each of the four companies (collectively, the "HINES Companies"):

| Entity Name | Principal Address | Status as of this Filing |
|---|---|---|
| **Unified Relocation Solutions, LLC ("URS")** EIN 82-1949494 | 150 SE 2nd Ave Miami, FL 33131 | Active – Reinstatement filed 11/16/19 |
| **Promaster Movers, Inc. ("Promaster")** EIN 82-4192745 | 4000 Hollywood Blvd Suite 555-S Hollywood, FL 33021 | Inactive |
| **Cash in Holdings LLC ("CIH")** EIN 81-3594154 | 8150 SW 72nd Ave Suite 1822 Miami, FL 33143 | Active – Reinstatement filed 3/4/20 |
| **We-Pack Moving LLC ("WPM")** EIN 81-1412635 Name changed to JB Hunt Movers LLC effective 9/3/2019 | 2054 Vista Parkway Suite 400 West Palm Beach, FL | Active – Reinstatement filed 3/4/20 |

HINES is listed as the registered agent for each company.

12. The undersigned conducted an Internet search for these businesses and found no record of any operating websites.[1]

### The Lending Bank

13. Bank A is a financial institution federally insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank A is based in Charlotte, North Carolina with branches throughout

---

[1] The only recorded activity of a business online comes from reviews on the Better Business Bureau website for Promaster and WPM. Both businesses are F-rated businesses on the site. Based on customer comments, it appears that Promaster and WPM acted as brokers for moving services. Virtually all of the reviews include complaints relating to bait-and-switch practices and other deceitful activities.

the United States. Bank A participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

### *PPP Loan Applications Submitted by HINES to Bank A*

14. The government has obtained and I have reviewed a copy of seven PPP loan applications that were submitted by HINES to Bank A. Bank A funded three of the seven loans:

| Loan # | Entity Name | Application Start Date | Number of Employees Claimed | Amount Sought/Claimed Average Monthly Payroll | Amount Disbursed | Date Deposited |
|---|---|---|---|---|---|---|
| "A" #7631 | URS | 4/18/20 | 8 | $10,380.00 $40,000/month | $10,380.00 | 5/11/20 |
| "B" #6106 | CIH | 5/9/20 | 49 | $794,835.00 $317,934.25/month | $794,835.00 | 5/13/20 |
| "C" #6065 | Promaster | 5/9/20 | 13 | $3,179,342.00 $1,271,736.99/month | $3,179,342.00 | 5/26/20 |
| "D" #0803 | URS d/b/a WPM | 5/10/20 | 9 | $6,358,684.00 $2,543,473.60/month | Closed by BOA | |
| "E" #2010 | Promaster | 5/23/20 | 170 | $1,800,000 $720,000/month | Closed by BOA | |
| "F" #6437 | CIH | 5/26/20 | 49 | $787,500.00 $315,000/month | Closed by BOA | |
| "G" #1132 | CIH | 5/27/20 | 49 | $612,000.00 $244,800/month | Closed by BOA | |
| | | | Total | $13,542,741.00 | $3,984,557.00 | |

15. On each loan application, HINES identified himself as the manager and authorized representative of the applicant business. According to Bank A, HINES signed and submitted his applications electronically through his online Bank A accounts. HINES also submitted purported copies of Internal Revenue Service ("IRS") tax forms in support of his applications.

16. The proceeds for these accounts were to be disbursed in the following four Bank A accounts that HINES opened in Miami, Florida between 2016 and 2018 (collectively, the "HINES Companies Accounts"): (1) checking account x7423 (in the name of URS), (2) savings account

x0857 (in the name of URS), (3) checking account x6470 (in the name of Promaster), and (4) checking account x6016 (in the name of CIH). HINES was the sole signer on the CIH and the URS checking accounts, and one of only two authorized signers on the Promaster checking and URS savings accounts. I have reviewed account opening records and bank statements for these accounts from January through June 2020. Bank A verified the identity of HINES when he opened the Promaster and CIH accounts by recording the number of his Florida driver's license. The same license number and name are associated with the registration of the Lamborghini sportscar.

### *False Statements on PPP Applications*

17. HINES made a number of false representations on his PPP loan applications.

18. First, HINES made false representations regarding the number of employees and monthly payroll. HINES claimed in the applications to have at least 70 employees and monthly payroll of approximately $4 million at the HINES Companies.

19. A review of the HINES Companies Accounts from January through April of 2020 shows monthly inflows and outflows averaging around $200,000—far less than the millions of dollars in payroll that HINES sought in the PPP applications.

20. From January through April 2020, the bank records show payments to at most a dozen different individuals from HINES Companies' accounts. Payments identified as work or pay-related were typically made by electronic money transfer services Zelle or Venmo and in no case amounted to more than $3,000 (e.g., Zelle transfer to "Gerard Work" for $704.81; Zelle transfer to "Jordan Work" for $1,531.64; Check for $1,698, memo line: "Pay through 2/16").

21. The Florida Department of Revenue requires employers to report records of wages paid to employees by Florida corporations as part of the payment of reemployment tax. The

Florida Department of Revenue had no record of wage information paid to employees of HINES Companies from the first quarter of 2015 through the first quarter of 2020.

### *PPP Proceeds Spent on Luxury and Personal Items, Including Lamborghini Sportscar*

22.     Moreover, HINES made a number of false statements relating to the use of the PPP funds in his loan applications. For example, HINES electronically certified that:

> All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule....
>
> The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud....

These statements were knowingly false when made because, as further detailed below, HINES never had the payroll obligations that he claimed to have, and HINES immediately diverted loan proceeds for unauthorized uses.

23.     On May 11, 2020 and May 13, 2020, Bank A deposited $10,380.00 and $794,835.00 in PPP funds in the respective URS and CIH checking accounts. Prior to those deposits, the respective balances in those accounts were $.30 and -$31,369.17. Between May 11 and May 14, $408,100.00 in PPP money was transferred from those accounts to the URS savings account. There were no other deposits into that account between May 1 and May 14, 2020, which opened the month with a balance of $8,693.08. On May 18, 2020, a wire for $318,497.53 was sent from URS savings account to "Car Dealership" with the following note: "Lamborghini Huracan Evo."

24.     Records from "Car Dealership" show HINES, identified by his Florida driver's license, purchased a Lamborghini sportscar (vehicle identification number

ZHWUF4ZF3LLA13255) for $318,497.53 on May 18 in North Miami Beach, Florida. Florida department of motor vehicles records show the Lamborghini sportscar is registered jointly in the name of HINES and Unified Relocation Solutions LLC, a self-described moving company.

25. The largest payments drawn on these accounts in May and June are listed below. There does not appear to be any business purpose for most, if not all, of these expenses.

| Date | Payee | Amount |
| --- | --- | --- |
| 5/13/20 | "Mom" | $15,000.00 |
| 5/14/20 | HINES cash | $9,500.00 |
| 5/27/20 | "Mom" | $15,000.00 |
| 5/27/20 | Saks Fifth Ave | $4,622.40 |
| 6/3/20 | Subject B | $15,000.00 |
| 6/5/20 | Fontainebleau Miami | $4,089.00 |
| 6/8/20 | HINES cash | $9,500.00 |
| 6/8/20 | Subject A | $10,000.00 |
| 6/9/20 | Subject C | $15,000.00 |
| 6/10/20 | The Setai Hotel Miami Beach | $7,264.97 |
| 6/10/20 | Subject C | $6,200.00 |
| 6/15/20 | Subject D | $5,000.00 |
| 6/15/20 | Graff Diamonds | $8,530.00 |
| 6/22/20 | The Miami Beach E | $5,988.02 |

26. Many of the smaller payments made from the HINES Companies Accounts in May and June were for rideshare and food delivery services. HINES himself does not have any personal accounts at Bank A but appears to use the HINES Companies Accounts for personal purposes.

27. Bank A closed the HINES Companies Accounts on June 24, 2020. The account balances totaled $3,463,162.68 and there have been no repayments on the loans.

## Conclusion

28. Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that:

- On or about May 9, 2020, in the Southern District of Florida and elsewhere, the defendant, DAVID T. HINES, did knowingly make a false statement and report for the purpose of influencing the action of a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation in connection with a loan

8

application, in that the defendant falsely represented on his application for a PPP loan to Bank A that he had average monthly payroll for his company Cash in Holdings LLC of approximately $245,135, in violation of Title 18, United States Code, Section 1014.

- On or about May 13, 2020, in the Southern District of Florida and elsewhere, the defendant, DAVID T. HINES, did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud a financial institution, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of a scheme and artifice to moneys and funds owned by, and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank A to deposit $794,835.00 into an account controlled by the defendant, in violation of Title 18, United States Code, Section 1344.

- On or about May 18, 2020, in the Southern District of Florida, and elsewhere, the defendant, DAVID T. HINES, did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce in criminal derived property of a value greater than $10,000, which the defendant knew was derived from a specified unlawful activity, to wit: the purchase of a 2020 Lamborghini sportscar in the amount of $318,497.53, which funds represented the proceeds of funds obtained through Wire Fraud and Bank Fraud, in violation of Title 18, United States Code, Section 1957.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Bryan Masmela
United States Postal Inspector

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone this __23__ day of July 2020.

HONORABLE JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

9